Héctor Ramírez Lebrón, recurrente, *v.* El Registrador de la Propiedad, Sección Segunda de Caguas, recurrido.

*Números:* RG-88-668 *Resueltos:* 30 de junio de 1992
RG-88-669

*Luis Rodríguez Bigas*, abogado del recurrente; el Registrador de la Propiedad, recurrido, compareció por escrito.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Se trata de dos (2) recursos gubernativos en los cuales se plantea la misma cuestión de derecho, razón por la que consolidamos los mismos. Pasamos, en primer término, a exponer los hechos particulares y específicos de cada recurso.

## I

En el primer recurso, el RG-88-668, el 15 de junio de 1988 se presentó para inscripción en el Registro de la Propiedad, Sección Segunda de Caguas, la Escritura Núm. 88 de Segregación, Liberación y Compraventa, otorgada ante el Notario Luis Rodríguez Bigas el 29 de abril de 1988. Comparecieron, como vendedora, Pronos UAN Corp. y, como comprador, el recurrente Héctor Ramírez Lebrón. El Registrador ([1]) denegó la inscripción ya que la escritura alegadamente adolecía de la siguiente falta:

No se cumple con el Artículo 17 de la Ley Notarial vigente. Obs[é]rvese no se indica claramente la forma en que el notario identificó a los comparecientes ni los medios supletorios utilizados para identificarlos. Apéndice 2, pág. 3.

La recurrente sometió escrito de recalificación. El Registrador ratificó su denegatoria original. Inconforme con esa determinación del Registrador, el recurrente Ramírez Lebrón instó recurso gubernativo ante este Tribunal en revisión de la mencionada determinación.

En el segundo recurso, el RG-88-669, el 15 de junio de 1988 se presentó para inscripción en el Registro de la Propiedad, Sección Segunda de Caguas, la Escritura Núm. 89

---

([1]) Lcdo. Ovidio Quesada Santiago.

de Primera Hipoteca otorgada ante el notario Luis Rodrí-
guez Bigas el 29 de abril de 1988. Comparecieron en la
misma, como deudor hipotecario, el recurrente Héctor Ra-
mírez Lebrón y, como acreedor hipotecario, First Service
Corporation. El Registrador se negó a inscribir la escritura
de hipoteca ya que alegadamente adolecía de las siguientes
faltas:

> No se cumple con el Artículo 17 de la Ley Notarial vigente.
> Obsérvese no se relacionan en el documento los medios suple-
> torios utilizados por el Notario para identificar los deudores
> hipotecarios.
> En [la] escritura se expresa texto literal del pagaré ... sin
> embargo, al final del pagaré —falta copiar la diligencia de la
> legalización de las firmas de los deudores hipotecarios por el
> notario. No se cumple con el Artículo 57 de la Ley Notarial
> vigente.

El recurrente sometió escrito de recalificación. El Regis-
trador reiteró la determinación originalmente emitida. No
conforme con esa denegatoria final del Registrador, el re-
currente Ramírez Lebrón acudió ante este Tribunal me-
diante el recurso gubernativo correspondiente.

Los dos (2) recursos gubernativos que hoy resolvemos
plantean la *misma* controversia de derecho, a saber: ¿cum-
plió el Notario autorizante con las formalidades extrínse-
cas de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de
julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*), en específico, con
las disposiciones pertinentes a la identidad de los otorgan-
tes, o, como también se le llama, la fe del conocimiento?
Estando en condiciones de resolver los recursos, procede-
mos a así hacerlo.

## II

De entrada, repasamos y reiteramos unos principios y
doctrinas jurídicas que debemos mantener presentes al re-

solver la controversia que plantean los recursos ante nuestra consideración.

Nos señala Giménez Arnau que "[e]l notario es un profesional del derecho que ejerce una función pública para robustecer, con una presunción de verdad, los actos en que interviene, para colaborar en la formación correcta del negocio jurídico y para solemnizar y dar forma legal a los negocios jurídicos privados ...". (Énfasis suprimido.) E. Giménez-Arnau, *Introducción al Derecho Notarial*, Madrid, Ed. Rev. Der. Privado, 1944, pág. 44. Por tal razón, la autenticidad y validez del instrumento público es el resultado neto del notario acatar fiel e integralmente los requisitos de la ley notarial ...". *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 834 (1979). Al actuar como tal, el notario ejerce una "previa calificación" y debe esforzarse por alcanzar la mayor claridad y certeza en los documentos presentados ante el Registrador. *Empire Life Ins. Co. v. Registrador*, 105 D.P.R. 136, 139 (1976).

En nuestro ordenamiento jurídico, pública es la fuente primaria que nutre el principio de legalidad que gobierna nuestro sistema inmobiliario registral. Ahí donde termina la función notarial de otorgar la correspondiente escritura pública, comienza la función calificadora del Registrador. La calificación registral es la "facultad por excelencia del Registrador que al ejercitarla realiza el propósito" de que al Registro sólamente tienen acceso los títulos que sean "válidos y perfectos". *Preciosas V. Del Lago v. Registrador*, 110 D.P.R. 802 (1981); *Cabrer v. Registrador*, 113 D.P.R. 424 (1982); *Mojica Sandoz v. Bayamón Federal Savs.* 117 D.P.R. 110 (1986).

Por consiguiente, le corresponde al Registrador calificar o reexaminar. el contenido de la escritura pública y cerciorarse de la validez del documento. Roca Sastre nos señala que "[n]o tiene la calificación registral por objeto

declarar la existencia o inexistencia de un derecho dudoso o controvertido entre partes contendientes, sino simplemente publicar mediante su inscripción, un derecho real o situación jurídica inmobiliaria" y que "en síntesis ... el fin de la calificación registral se reduce a determinar si un título es o no inscribible, y nada más". R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosh, 1979, T. II, pág. 265.

El Art. 64 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2267, dispone en lo pertinente que:

> Los Registradores calificarán bajo su responsabilidad la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Dicha calificación comprenderá las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos....

Añaden los Art. 76.1 y 55.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2003–76.1 y 2003–55.1, edición especial, que:

> 76.1
> El Registrador considerará, conforme a lo prescrito en el Artículo 64 de la Ley ... como faltas de legalidad de los documentos cuya registración se solicite, todas las que afecten, tanto a las formas de los documentos como a la eficacia de las obligaciones o derechos contenidos en los mismos, siempre que resulten del texto de dichos documentos o puedan conocerse por la simple inspección de ellos.

> 55.1
> Los instrumentos notariales que se presenten para registro no adolecerán de ninguna de las faltas que según la legislación notarial vigente los hagan nulos o anulables.

De las disposiciones anteriormente citadas surge con claridad que dentro de la función calificadora del Registrador está la de examinar las formas extrínsecas de los

documentos notariales presentados para su inscripción. A esos efectos, le corresponde al Registrador determinar si el documento presentado cumple con las formalidades que exige nuestra Ley Notarial, como por ejemplo: la capacidad de los otorgantes, la identidad de los otorgantes o fe del conocimiento, rúbrica, firma, y otros.

## III

 Resulta conveniente señalar que la nueva Ley Notarial de Puerto Rico, Ley Núm. 75, ante, ([2]) la cual derogó la Ley Núm. 99 de 27 de junio de 1956 recogió, en varias de sus disposiciones, muchas de las expresiones o normas de nuestra jurisprudencia notarial. A esos efectos, nos señala el profesor Pedro Malavet Vega que:

> ... esta nueva legislación no implica en forma alguna una sacudida general de la práctica notarial. Las modificaciones contenidas en la ley son, en su mayoría, aspectos ya tratados y resueltos por la jurisprudencia reciente de nuestro Tribunal

---

([2]) La Exposición de Motivos de la vigente Ley Notarial de Puerto Rico expresa:
"La vigente Ley Notarial ... tiene como fundamento la institución notarial que existe en los países de tradición latina.

"La distinción del notario de tipo latino a la de otro tipo de notario es importante por la función que ha ejercido y que ejerce aquél en la sociedad. En el notario puertorriqueño se funden dos facetas esenciales en la administración de la justicia, tanto en su función como profesional o técnico conocedor del Derecho como en su carácter de funcionario público. Ante su fe notarial se crean los derechos que emanan del tráfico jurídico de los bienes inmuebles.

"En esa función el notario puertorriqueño no es abogado de ninguno de los otorgantes, no representa a cliente alguno, representa a la fé pública, representa la ley para todas las partes. La cualidad medular que lo distingue del abogado es su imparcialidad, y en tal condición debe actuar en un plano superior al de las partes.

"Es de vital importancia, pues, la elevación del nivel de capacitación jurídica del notario y su dignificación por la importante función social que despliega en interés de la comunidad puertorriqueña, en esa doble función de profesional del Derecho como asesor y consejero legal, árbitro de la ley, así como en la de instrumentador de los documentos que conllevan los actos y negocios jurídicos a los cuales les da seguridad y certeza con su pericia profesional y bajo el manto de la fe pública de la cual es depositario." Exposición de Motivos de la Ley Núm. 75 de 2 de julio de 1987, Leyes de Puerto Rico, págs. 262–263.

Supremo. Esto es normal, a nuestro juicio. Las formalidades y solemnidades del Instrumento Público no cambian vertiginosamente, es de lo poco que se mantiene razonablemente inmune al shock del futuro. El notariado sigue siendo faena de tiempo y paciencia. (Énfasis suprimido.) P. Malavet Vega, *Compendio de Derecho Notarial Puertorriqueño*, Ponce, 1987, pág. 10.

¿Cuál es el alcance y significado del requisito de la fe del conocimiento de los otorgantes exigida por nuestra Ley Notarial?

Examinamos, aun cuando al amparo de la derogada Ley Notarial,[3] el trasfondo jurisprudencial de este tan importante requisito.

En *In re Cancio Sifre*, 106 D.P.R. 386, 394–395 (1977), expresamos que:

La transformación de nuestra economía, el incremento poblacional concentrado en grandes ciudades sin duda hacen más laboriosa para el notario la identificación de otorgantes, pero no justifican degradar le fe pública y el valor de legitimación que tan pesadamente descansan en esa dación de fe de conocimiento de las personas y de haberse el notario asegurado de su identidad. Temprano en el Derecho notarial afloró el mandato "e debe ser muy acucioso el Escribano de trabajarse de conocer los omes a quien faze las cartas, quién son y de qué lugar, de manera que non pueda ser fecho ningún engaño". (Ley 68, título 18, Partida 3a.) La garantía que para el tráfico jurídico y legitimación de actos representa el citado requisito del Art. 16 de la Ley bien vale que el notario sea acucioso y esforzado en revelar la identidad de quienes ante él contratan o actúan.

■ Más adelante, en *Sucn. Santos v. Registrador*, ante, pág. 837, expresamos que:

---

[3] El Art. 16 de la derogada Ley Notarial de Puerto Rico, 4 L.P.R.A. ant. sec. 1016, disponía en lo pertinente:

"Los notarios darán fe en los instrumentos públicos de que conocen a las partes, o de que se han asegurado de su conocimiento por el dicho de testigos.... En tales casos graves y extraordinarios en que a un notario le sea imposible dar fe del conocimiento de los otorgantes, ni puedan estos presentar un testigo o testigos de conocimiento, lo expresará así, designando los documentos que le presentaren como prueba de nombre, estado y vecindad, y refiriendo además el motivo del caso grave y extraordinario."

[e]l mecanismo para lograr correspondencia real y legítima entre persona y firma, es exigiendo la ley la comparecencia y conocimiento por el notario. En otras palabras, *la fe del conocimiento persigue evitar la suplantación de las partes en el otorgamiento.* (Énfasis suplido.)

 Así también, en *In re Olmo Olmo*, 113 D.P.R. 441, 454–455 (1982), esbozamos en forma abarcadora la importancia de la fe del conocimiento que da el Notario. Allí expresamos que:

Es casi unánime la posición que adjudica a la fe del conocimiento una importancia suprema e imperiosa en la gestión notarial. Giménez Arnau considera que el fundamento racional de la identificación del requirente estriba en "la finalidad del instrumento público y en su eficacia. Todo el contenido de la escritura, si no se acredita la identidad del compareciente puede resultar estéril, porque sus efectos deberían quedar subordinados a la prueba de que las personas designadas en la comparecencia eran efectivamente las que habían de concurrir al otorgamiento". E. Giménez Arnau, *Instituciones de Derecho Notarial*, Madrid, Ed. Reus, 1954, T. II, pág. 42. José M. Sanahuja y Soler en su *Tratado de Derecho Notarial* (Barcelona, Ed. Bosch, 1945, T. I, pág. 457) estima que "en principio es necesario que el notario garantice la identidad de las personas que intervienen en un negocio jurídico, porque la ilación entre unas situaciones y otras exige, para dar certidumbre a las relaciones jurídicas, que se fundamente bajo la fe notarial el punto de unión o de conexión, que es precisamente la persona que ostentando un derecho lo transmite a favor de otra". En igual sentido, consúltese Pedro Ávila Álvarez, *Estudios de Derecho Notarial*, 4ta ed., Madrid, Ed. Montecorvo, 1973, Sec. 15, pág. 121. M. Fernández Casado, en su *Tratado de Notaría* (Madrid, 1895, T. I, pág. 463) describe elocuentemente que la fe de conocimiento "es la rueda catalina de la autenticidad; sin él nunca podría alejarse el temor de una suposición ó usurpación del estado civil. De poco serviría que el Notario recogiera cuidadosamente las manifestaciones de los concurrentes á su estudio y las revistiera de todas las solemnidades del instrumento público, si no constara que la persona que establecía la relación jurídica era la misma á quien verdaderamente corresponden el nombre y apellidos con que se presenta á contratar".

 Finalmente, hoy reiteramos lo expresado por Ló-

pez Garzón a los efectos de que lo importante de la fe del conocimiento es "asegurar que el compareciente es quien dice ser". (Énfasis suprimido.) J. López Garzón, *Titularidad y Fe de Conocimiento*, 7 Rev. Der. Notarial 259, 270 (1955).

Estos principios, tan fundamentales, sobre la "fe del conocimiento" se mantienen vigentes en la nueva Ley Notarial de Puerto Rico. Ésta, en su Art. 15 (4 L.P.R.A. sec. 2033), dispone:

La escritura ·pública, en adición al negocio jurídico que motiva su otorgamiento y sus antecedentes y a los hechos presenciados y consignados por el notario en la parte expositiva y dispositiva contendrá lo siguiente:

(e) *La fe expresa del notario de su conocimiento personal de los otorgantes o, en su defecto, de haberse asegurado de su identidad por los medios establecidos por este Capítulo*, de que a su juicio éstos tienen la capacidad legal necesaria para otorgar el acto o contrato de que se trata y de haberles leído a ellos y a los testigos, en su caso, la escritura o de haber permitido que la leyesen a su elección antes de firmarla, o de la renuncia al derecho que tienen de así hacerlo. (Énfasis suplido.)

De lo anteriormente expuesto surge con claridad que tanto la derogada Ley Notarial de Puerto Rico, *como la actual*, consideran como un asunto medular la comparecencia personal y el conocimiento de los firmantes. *In re Cruz Cruz*, 126 D.P.R. 448 (1990).

IV

En los dos (2) recursos ante nuestra consideración el Registrador alegó, como primer fundamento para su denegatoria, que el notario autorizante no identificó debidamente a los otorgantes en las correspondientes escrituras, según lo prescrito por el Art. 17 de la vigente Ley Notarial de Puerto Rico, *ya que no expresó en la escritura el método supletorio que utilizó para identificarlos.* Señaló, además,

que en caso de identificarlos mediante documento, el notario tenía el deber de consignar una relación y descripción de cada uno de los documentos de identidad. En lo pertinente transcribimos la dación de fe de cada escritura:

> [Escritura Núm. 88 de Segregación, Liberación y Compraventa.]
> ... DOY FE del conocimiento personal de los comparecientes, o de haberme asegurado de la identidad de éstos por los medios establecidos por la Ley Notarial.... Caso Núm. RG-88-668, Apéndice 4, pág. 6.

> [Escritura Núm. 89 de Primera Hipoteca.]
> ... Yo, el Notario, CERTIFICO que conozco al acreedor hipotecario y que me he asegurado de la identidad de los Deudores Hipotecarios por los medios establecidos por la Ley Notarial .... Caso Núm. RG-88-669, Apéndice 4, pág. 31.

Por su parte, alega el recurrente que el Art. 17 de la vigente Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035, no le exige al notario el deber de expresar en el documento el método supletorio utilizado para identificar a los otorgantes. Sostiene el recurrente que, conforme al Art. 15 de la Ley Notarial de Puerto Rico, ante, basta que el notario exprese en el documento la "fe de conocer personalmente a los otorgantes o de haberse asegurado de la identidad de los otorgantes". El citado Art. 17 de la Ley Notarial Puerto Rico, reza:

> Serán medios supletorios de identificación, *en defecto del conocimiento personal del notario*:
> (a) La afirmación de una persona que conozca al otorgante y sea conocida por el notario, siendo aquélla responsable de la identificación y el notario de la identidad del testigo.
> (b) La identificación de una de las partes contratantes por la otra, siempre que de esta última dé fe de conocimiento el notario.
> (c) La identificación por documento de identidad con retrato y firma, expedido por las autoridades públicas competentes del Estado Libre Asociado de Puerto Rico, de los Estado Unidos, o de uno de los Estados de la Unión, cuyo objeto sea identificar a

las personas o por pasaporte debidamente expedido por autoridad extranjera.

Los testigos de conocimiento serán responsables de la identificación de los otorgantes; igualmente lo será el otorgante que testifique sobre la identidad de otros otorgantes no conocidos por el notario y el notario lo será del conocimiento de tales testigos.

■ Este Tribunal, al interpretar las disposiciones de un estatuto, tiene el deber de hacer cumplir el principio cardinal de hermenéutica, al efecto de descubrir y hacer cumplir la verdadera intención legislativa. *Rivera Maldonado v. Autoridad Sobre Hogares*, 82 D.P.R. 453, 456 (1963); *Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404, 409 (1988). Dicha ley o estatuto debe ser interpretado "tomando en consideración los fines que persigue y en forma tal que la interpretación se ajuste al 'fundamento racional o fin esencial de la ley' y a la política pública que la inspira". *Esso Standard Oil v. A.P.P.R.*, 95 DPR 772, 785 (1968); *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816, 820 (1986).

■ De las disposiciones de los citados Art. 15 y 17 de la Ley Notarial de Puerto Rico, podemos colegir varios principios. Resulta claro que el notario, en la escritura pública, tiene el deber primordial de dar fe del conocimiento personal de los comparecientes. El "conocimiento directo y personal del notario es el medio por excelencia" para identificar a los otorgantes. *In re Olmo Olmo*, ante, pág. 463. Dicho conocimiento personal no tiene que ser uno previo a la fecha del otorgamiento de la escritura pública. *In re Cancio Sifre*, ante.(4)

---

(4) En *In re Cancio Sifre*, 106 D.P.R. 386, 394 (1977), a esos efectos expresamos: "La Ley no exige el conocimiento 'personal' de otorgantes por el notario en el concepto de una relación previa a su llegada a la notaría. Basta el conocimiento que el notario deriva de su observación de los otorgantes identificándose mutuamente en las etapas preliminares del acto jurídico notarial, toda vez que, con rarísimas excepciones en que dos partes se ponen de acuerdo para defraudar, los otorgantes tienen tanto interés como el notario en la trasmisión de un título válido, y debe suponerse que en los contratos bilaterales el que contrata con una persona obligándose a su favor y estipulando derechos, le conoce perfectamente. El notario no está restringido en sus

■ Ahora bien, careciendo el notario de la facultad de conocer a los otorgantes, el mismo Art. 15, ante, de manera supletoria, señala que "o, en su defecto, de haberse asegurado de su identidad por los medios establecidos por este Capítulo ...". En otras palabras, si el notario no conoce personalmente a los otorgantes, *entonces, y no antes*, es que se activa el mandato estatutario al efecto de recurrir a los medios supletorios de identificación. Esto surge con claridad del lenguaje utilizado por el legislador al usar la frase *"o en defecto de"*.

En la Escritura Núm. 88, el notario transcribió literalmente la parte del Art. 15(e), que se refiere a la "fe del conocimiento". En la Escritura Núm. 89, el notario da fe de conocer personalmente al acreedor hipotecario. En cuanto a esa parte, el notario cumplió cabalmente con las exigencias requeridas por la Ley Notarial, ya que afirma *conocer personalmente* a dicho otorgante. Sin embargo, luego expresa que "me he asegurado de la identidad de los *deudores* hipotecarios por los medios establecidos" en la Ley. Como ya hemos mencionado, si el notario no conoce a algunos de los otorgantes, entonces debe recurrir a los métodos supletorios de identificación del Art. 17, ante. La polémica a resolver, repetimos, se circunscribe a determinar, si bajo los antes citados Arts. 15(e) y 17, tenía el notario aquí en controversia el deber de expresar en la escritura qué método supletorio utilizó, o sea, indicar si fue el inciso (a), (b) ó (c) del citado Art. 17, o, bastaba que el notario expresara, como lo hizo, que se aseguró de la identidad de los otorgantes.

■ Aun cuando es correcto que el Art. 17, ante, no requiere que el notario consigne, en forma expresa, en la escritura el método supletorio utilizado, *somos del criterio que una lectura integral y armoniosa de ambos artículos,*

---

medios para identificar otorgantes al uso de testigos de identificación. Su profesión de abogado le provee variados recursos para asegurarse de tal identidad."

*revela que efectivamente debe requerirse que si en la otorgación de una escritura el notario utiliza los medios supletorios de identidad, éstos deben surgir con claridad de dicho instrumento público. Esto es, no basta con que el notario exprese en dicha escritura, en forma general, que se aseguró de la identidad conforme a la Ley, sino que debe de consignar cuál de los incisos del citado Art. 17 utilizó.*

■ Teniendo el notario el deber de ser "acucioso y esforzado en revelar la identidad de quienes ante él contratan o actúan", *In re Cancio Sifre*, ante, pág. 395, somos del criterio que resulta *complementario* a dicho deber que el notario, de no conocer a alguno de los otorgantes, *haga constar en la escritura que otorga el método supletorio específico de identidad que utilizó para cerciorarse, en forma "acuciosa y esforzada", de la misma.* Véanse: Reglas 30 y 31 del Proyecto de Reglamento Notarial de Puerto Rico de junio de 1992.[5]

Por los fundamentos anteriormente expuestos, *resolvemos que actuó correctamente el Registrador al denegar la inscripción de las Escrituras Núms. 88 y 89 debido a que no se cumplió con los requisitos formales de la Ley Notarial de Puerto Rico. Procede, en consecuencia, la confirmación*

---

[5] Nos parece conveniente señalar el "funcionamiento" de los mecanismos de identificación del Art. 17 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035. En primer lugar, reiteramos que se recurre a los medios supletorios *en defecto del conocimiento personal del notario* del otorgante u otorgantes. El inciso (a) de dicho artículo trata del método supletorio mediante el uso de un testigo de conocimiento. Este tiene que ser conocido por el notario y a su vez por el otorgante. Si el notario utiliza este método, debe expresar en la escritura quién es el testigo de conocimiento y además consignar que dicho testigo conoce al notario y al otorgante desconocido por el notario. De esta manera se cumple con el requisito de identificación.

El inciso (b) de la vigente Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035 (b), contiene un *nuevo* método de identificación que permite a uno o más de los otorgantes que sean conocidos por el notario, identificar al otro otorgante que no es conocido por el notario. Mediante este método, el notario expresará en la escritura que conoce al otorgante y éste a su vez que conoce al otro otorgante. Así, pues, se establece la cadena de identificar adecuadamente al otorgante no conocido por el notario.

Finalmente, el inciso (c) de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035 (c), recoge nuestras expresiones en el caso de *In re Olmo Olmo*, ante, en cuanto se refiere a los *documentos de identidad*. Bajo este inciso (c), somos del criterio que el notario tiene el deber de denominar, reseñar o indicar el documento de identidad con retrato y firma que utilizó para identificar al otorgante.

*de las notas denegatorias. Se dictará sentencia de conformidad.*(⁶)

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.

---

(⁶) El resultado a que llegamos, hace innecesario que consideremos la corrección del segundo fundamento aducido por el Registrador en apoyo de su denegatoria respecto a la escritura pública número 89, posición que resulta cuestionable.

En el mismo arguye el Registrador recurrido, en síntesis, que como el pagaré fue suscrito y reconocido mediante affidávit, el notario otorgante incumplió con lo dispuesto por el Art. 57 de la vigente Ley Notarial de Puerto Rico, por cuanto, al *transcribir literalmente* dicho pagaré en la escritura, dejó en blanco la parte de la legitimación de las firmas en el mismo.

La actuación del notario en ese respecto —aun cuando denota un defecto de forma o falta reglamentaria, que debería de corregir el notario— no es suficiente para impedir la inscripción de la escritura en el Registro por razón de que la escritura otorgada cumple con los requisitos que exige el Art. 196 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2615; esto es, del transcrito pagaré surgen todos los datos que requiere el citado Art. 196.