WESTERN FEDERAL SAVINGS BANK, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD, SECCIÓN PRIMERA DE BAYAMÓN, recurrido.

*Número:* RG-93-253        *Resuelto:* 6 de noviembre de 1995

*José L. Landrón Ramery* y *José M. Biaggi Junguera*, abogados de la parte recurrente; *Etienne Badillo Anazagasty*, Registrador de la Propiedad, recurrido.

PER CURIAM: Mediante un recurso gubernativo acude ante nos Western Federal Savings Bank, y solicita la revisión de la calificación final hecha por el Registrador de la Propiedad, Hon. Etienne Badillo Anazagasty, que denegó la inscripción de una escritura porque en su copia certificada no aparecían las firmas de los otorgantes. Por entender que cuando el notario da fe de su existencia no es necesario que en las copias certificadas de las escrituras consten las firmas de los otorgantes, revocamos.

I

El 29 de abril de 1993, el notario José L. Landrón Ramery otorgó una escritura de primera hipoteca a favor del recurrente, Western Federal Savings Bank (en adelante Western). Ese mismo día, Landrón Ramery expidió la primera copia certificada de la escritura, al final de la cual incluyó la certificación siguiente:

——CERTIFICO: Que la copia que antecede es fiel y exacta del contenido de la escritura No. 575 que obra en mi protocolo, la cual contiene 17 folios, comprendiendo 23 páginas y en la que aparecen en todos los folios las iniciales de los comparecientes y el sello y rúbrica del Notario autorizante, y está firmada por los comparecientes y firmada, signada y rubricada por el Notario autorizante.

——ES PRIMERA COPIA certificada de su original, en la que aparecen cancelados los correspondientes sellos de Rentas Internas y Sello Notarial, expedida a solicitud de Western Federal Savings Bank.

En Mayagüez, Puerto Rico, hoy 29 de abril de 1993. DOY FE.

NOTARIO PUBLICO

Apéndice, pág. 26.

Poco después, Western solicitó la inscripción de dicha primera hipoteca en el Registro de la Propiedad, Sección Primera de Bayamón, y con ese propósito presentó la copia certificada de la escritura referida en esta sección.

Oportunamente, el Registrador de la Propiedad, Hon. Etienne Badillo Anazagasty (en adelante el Registrador), notificó la calificación del documento, en la cual dispuso que no podía inscribir la escritura porque "[en] el documento [de epígrafe] no aparec[ían] las firmas de los otorgantes [Art. 16 sec. 2034]". Apéndice, pág. 24. Acto seguido, Western solicitó la recalificación del documento. No obstante, el Registrador sostuvo su calificación original por los mismos fundamentos y tomó anotación preventiva por un término de sesenta (60) días a partir de la notificación de dicha calificación.

Inconforme, Western acude ante nos y solicita que revoquemos la decisión del Registrador de denegar la inscripción de la escritura, porque en su copia certificada no constaban las firmas de los otorgantes. Revocamos.

## II

Nos corresponde reexaminar la amplitud del consabido principio de legalidad del derecho hipotecario registral, particularmente en lo que respecta a la calificación de los documentos notariales.

■ El principio de legalidad tiene como propósito fomentar el que sólo aquellos títulos que reúnan los requisitos establecidos por ley o reglamento tengan acceso al Registro de la Propiedad. J.L. Lacruz Berdejo,

*Lecciones de Derecho Inmobiliario Registral*, 2da ed., Zaragoza, [s. Ed.], 1957, pág. 394; J.L. Lacruz Berdejo, *Derecho Inmobiliario Registral*, Barcelona, Ed. Bosch, 1968, pág. 364. Véanse, además: *Preciosas V. Del Lago v. Registrador*, 110 D.P.R. 802 (1981); *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110 (1986).

■ La calificación es el instrumento mediante el cual se hace efectivo este principio. Lacruz Berdejo, *Lecciones de Derecho Inmobiliario Registral, op. cit.*, pág. 394. Por este medio, los registradores verifican los títulos presentados para determinar si son inscribibles. *Ramírez Lebrón v. Registrador*, 131 D.P.R. 76 (1992). Los registradores tienen amplios poderes para corroborar dichos títulos, pero éstos no se extienden hasta el punto de poder dilucidar la existencia de derechos dudosos, pues los registradores no son jueces sino funcionarios ejecutivos. *Preciosas V. Del Lago v. Registrador*, supra, pág. 810.

■ Tanto el Art. 64 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2267, como los Arts. 55.1 y 76.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2003-55.1 y 2003-76.1, edición especial (en adelante Reglamento Hipotecario), regulan el ámbito de la calificación registral. El Art. 64 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, dispone, en esencia, que:

> Los Registradores calificarán, bajo su responsabilidad, la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Dicha calificación comprenderá las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos.

■ Por otro lado, el Reglamento Hipotecario expresa, en su Art. 76.1, *supra*, que:

> El Registrador considerará, conforme a lo prescrito en el artículo 64 de la Ley [30 L.P.R.A. sec. 2267] como faltas de legalidad de los documentos cuya registración solicite, todas las que afecten, tanto las formas de los documentos como la eficacia de las obligaciones o derechos contenidos en los mismos, siempre que resulten del texto de dichos documentos o puedan conocerse por la simple inspección de ellos.

Finalmente, el Art. 55.1 del Reglamento Hipotecario, *supra*, dispone que "[l]os instrumentos notariales que se presentan para registro no adolecerán de ninguna de las faltas que según la legislación notarial vigente los hagan nulos o anulables".

La calificación de documentos notariales se circunscribe, por lo tanto, a verificar (1) si éstos cumplen con las formalidades extrínsecas dispuestas por ley; (2) si los otorgantes poseen la capacidad jurídica para realizar el negocio jurídico pertinente; (3) si los actos dispositivos contenidos en la escritura son válidos, y (4) si existen obstáculos que surjan del Registro de la Propiedad y que impidan la inscripción del documento. J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, Madrid, Ed. Marcial Pons, 1981, T. I, págs. 688–672.

En cuanto a la calificación de las formas extrínsecas de los documentos notariales, este Tribunal ha dispuesto que "le corresponde al Registrador determinar si el documento presentado cumple con las formalidades que exige nuestra Ley Notarial, como por ejemplo: la capacidad de los otorgantes, la identidad de los otorgantes o fe del conocimiento, rúbrica, firma, y otros". *Ramírez Lebrón v. Registrador*, supra, pág. 83.

Algunos tratadistas han ido más allá al delinear los parámetros de la calificación registral, en lo que respecta a las formas extrínsecas de los documentos notariales. Como mínimo, han dispuesto que el Registrador tiene que verificar: la competencia del notario; el cumplimiento con los

requisitos formales esenciales exigidos por ley para otorgar escrituras y expedir copias; la legitimidad, legalidad y autenticidad de la copia certificada de la escritura, y el uso de papel timbrado y el pago de impuestos. Véanse: R.H. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, págs. 267–270; Chico y Ortiz, *op. cit.*, pág. 670.

En el caso de marras, la controversia ante nos se circunscribe a determinar si una copia certificada de una escritura cumple con los requisitos formales y de autenticidad exigidos por la Ley Notarial de Puerto Rico y la Ley Hipotecaria y del Registro de la Propiedad, aun cuando no incluya las firmas de sus otorgantes. Como puede observarse, nada hay en la Ley Hipotecaria y del Registro de la Propiedad que exija dichas firmas en las copias certificadas de escrituras. Resulta, por lo tanto, necesario determinar si la Ley Notarial de Puerto Rico contiene un requisito a esos efectos.

## III

El Art. 39 de la Ley Notarial de de Puerto Rico, sobre la emisión de las copias certificadas de instrumentos públicos, dispone lo siguiente:

> Una copia certificada es el traslado literal, total o parcial, de un documento otorgado ante notario, que libre éste o el que tenga legalmente a cargo su protocolo, *con certificación respecto a la exactitud del contenido* y al número de folios que contenga el documento, así como la firma, signo y rúbrica y, en todos los folios, el sello y rúbrica del notario autorizante. (Énfasis suplido.) 4 L.P.R.A. sec. 2061.

El Art. 45 de dicha ley, por su parte, señala que el notario puede "expedir copias certificadas, fotográficas o copias reproducidas por cualquier otro medio electrónico, de escrituras matrices, las cuales una vez certificadas por

el notario serán consideradas válidas para todos los efectos legales". 4 L.P.R.A. sec. 2067.

Con respecto a las copias certificadas, el Prof. Pedro Malavet Vega dispone que "es importante señalar que la copia no corrige las deficiencias de la escritura original, por lo que aun cuando en la copia se certifique que el original está firmado, signado, rubricado y sellado, siendo falsos tales extremos, tanto el original como la copia no tienen validez alguna". P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, pág. 139.

▆▆▆ De lo anterior se desprende con claridad que, si bien el notario tiene el deber de dar fe de que la escritura matriz, según consta en su Protocolo, contiene todas las firmas necesarias para su validez, no tiene que proveer una copia de las firmas ni hacer constar en la copia dónde aparecen las firmas en el original. La certificación del notario con respecto a la exactitud del contenido y la existencia de firmas suple ese vacío. El profesor Malavet Vega claramente da ese hecho por sentado al expresar que, aunque el notario certifique que el documento está firmado en el original, si no lo está, no serán válidos el original ni la copia certificada.

Cabe señalar, además, que el nuevo Reglamento Notarial de Puerto Rico recoge, en su Regla 49, la interpretación de la Ley Notarial de Puerto Rico antes expuesta al disponer que las certificaciones de copias certificadas expresarán que aparecen en el original las firmas e iniciales de los comparecientes y la firma, la rúbrica, el signo y el sello notarial. Los comentarios a dicha regla señalan que su propósito es aclarar "que el Notario solamente certificará que en el instrumento matriz aparecen las firmas e iniciales de los comparecientes, sin tener que especificar el nombre e iniciales de los comparecientes cuyas firmas aparecen en éste". Comentario a la Regla 49 del Reglamento

Notarial de Puerto Rico, Secretariado de la Conferencia Judicial de Puerto Rico, 1995, pág. 80.

A la luz de lo anterior, veamos si el Registrador actuó con corrección al rehusarse a inscribir la escritura.

## IV

El recurrido dispone en su alegato que el Art. 39 de la Ley Notarial de Puerto Rico, antes citado no exime al notario de transcribir la firma de los otorgantes cuando expide una copia certificada de una escritura pública. Entiende éste que las firmas constituyen parte del contenido de la escritura que, por lo tanto, tiene que ser transcrito para poder inscribirse en el Registro de la Propiedad. A modo de ejemplo, incluye copias de escrituras sometidas ante él por otros notarios, quienes han expresado en dónde, en la escritura original, constan las firmas del siguiente modo:

    – –(Firmado): Fulano de Tal y Fulana de Tal.
    – –(Firmado): Banco del Pueblo
    – –(Firmado, signado, sellado y rubricado): Notario Público.

Como expresamos antes, la certificación que el notario expide al final de la copia certificada de una escritura tiene precisamente el propósito de dar fe o, en otras palabras, de garantizar la autenticidad del documento, así como el hecho de que éste cumple con todas las exigencias de contenido y de forma requeridas por la Ley Notarial de Puerto Rico.

En estricto derecho, al calificar estos documentos el Registrador tiene únicamente que velar —en lo que a las firmas respecta— por que el notario haya dado fe de la existencia de éstas. Si en la escritura consta que el notario ha dado fe de ello, el Registrador no puede negarse a inscribir dicho documento por el hecho de que en éste no consten

claramente las firmas de los otorgantes. No es su deber velar por que lo dispuesto por el notario autorizante sea cierto. Si luego resulta que la escritura no contiene las firmas requeridas, y por ello se declaran inválidas tanto ésta como su copia certificada, es al notario a quien le corresponderá responder por ello.

No obstante, aunque la Ley Hipotecaria y del Registro de la Propiedad y la Ley Notarial de Puerto Rico no exigen que aparezcan las firmas y los nombres de los otorgantes al calce de una copia certificada de una escritura, la buena práctica notarial aconseja que se mencionen al menos los nombres de los firmantes, según aparecen en sus firmas en la escritura original, a los fines de evitar dudas y complicaciones futuras. Nada de lo que aquí señalamos debe desalentar que se continúe con dicha buena práctica notarial. Sólo resolvemos que la actuación del Registrador, de denegar de plano la inscripción, fue muy rígida.

Considerando lo expuesto anteriormente, *procede revocar la decisión del Registrador de la Propiedad. Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri concurrió sin opinión escrita. El Juez Asociado Señor Negrón García emitió una opinión disidente. El Juez Asociado Señor Rebollo López no intervino.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

Varios principios registrales y notariales elementales motivan este disentir. *Primero*, en su óptima dimensión, la Ley Notarial de Puerto Rico —Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*)— aspira a que al Registro de la Propiedad entren sólo documentos que no adolezcan de defectos de forma o sustancia; esto es, que cumplan

"con las formas extrínsecas que rigen la ley, capacidad del otorgante y si el negocio jurídico contenido es válido". (Citas omitidas.) *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110, 127 (1986). Sólo así se logran los objetivos de legitimación, publicidad y protección de terceros ínsitos en la ley. Los "asientos del Registrador deben ser lo más completos y claros que sea posible". *Acevedo v. Registrador*, 115 D.P.R. 461, 462 (1984). *Segundo,*

> [e]n nuestro ordenamiento jurídico, [la escritura] pública es la *fuente primaria que nutre el principio de legalidad que gobierna nuestro sistema inmobiliario registral.* Ahí donde termina la función notarial de otorgar la correspondiente escritura pública, comienza la función calificadora del Registrador. La calificación registral es la "facultad por excelencia del Registrador que al ejercitarla realiza el propósito" de que al Registro s[o]lamente tienen acceso los títulos que sean "válidos y perfectos". *Preciosas V. Del Lago v. Registrador*, 110 D.P.R. 802 (1981); *Cabrer v. Registrador*, 113 D.P.R. 424 (1982); *Mojica Sandoz v. Bayamón Federal Savs.*[,] 117 D.P.R. 110 (1986). (Énfasis suplido.) *Ramírez Lebrón v. Registrador*, 131 D.P.R. 76, 81 (1992).

*Tercero,* la función calificadora, de examinar las formas extrínsecas de las escrituras presentadas para inscripción, obliga al Registrador a "determinar si el documento presentado cumple con las formalidades que exige nuestra Ley Notarial, como por ejemplo: la capacidad de los otorgantes, la identidad de los otorgantes o fe del conocimiento, rúbrica, *firma,* y otros". (Énfasis suplido.) *Ramírez Lebrón v. Registrador*, supra, pág. 83. *Cuarto,*

> ...en su acepción genérica, todo documento está formado, estructuralmente, por dos elementos: la *materia* —de carácter tangible o corporal— y su *contenido*, expresión del pensamiento de una persona o personas que se incorpora al primer elemento a través de la grafía escrita. En la teoría de los documentos públicos los instrumentos en que interviene un notario proyectan y forman dos planos horizontales y paralelos, a saber, el concerniente a su contenido sustantivo o acto documentado (*negotium*) y el referente al plano de *Instrumentum*, esto es, derecho notarial o forma, en sus importantes distinciones de los

aspectos de "dimensión-acto" y "dimensión-papel" que destaca Núñez Lagos. *Los Esquemas Conceptuales del Instrumento Público*, Rev. Der. Not., Núms. I y II (1953). La dimensión-papel no implica la física relativa al tamaño del papel empleado, sino a un resultado de visibilidad protocolaria, "por virtud de la narración, la imagen que refleja el negocio jurídico, o lo que es igual, se trata de expresar en el espacio, y mejor dicho en la extensión superficial, del papel, todos los elementos endógenos y exógenos que integran la formación y configuración del acto jurídico". Neri, *Tratado de Derecho Notarial*, (1970), Tomo 3, págs. 320–321. (Énfasis en el original.) *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 834 (1979).

*Quinto*, el consentimiento mediante la firma de los otorgantes " 'es la savia del documento' ". P. Avila Álvarez, *Estudios de Derecho Notarial*, 3ra ed. rev., Barcelona, Ed. Nauta, 1962, pág. 257.([1]) "[L]a firma consiste en una manifestación formal y escrita que acredita la prestación del consentimiento .... Explicando el alcance de la firma dice González Palomino que 'la integridad jurídica implica que el *documento ha de estar completo y terminado*'. Un documento sólo es *documento cuando está terminado*: el paso del apunte, borrador o nota, a la categoría de documento se opera mediante la firma. *Antes de la firma el documento*, en los casos normales, es sólo un papel; *después de la*

---

([1]) Aurelio Fernández Anadon, en su artículo denominado *Significado de la firma del instrumento público o la firma suplida*, en *Centenario de la Ley del Notariado*, Madrid, Ed. Reus, 1962, Vol. I, Sec. 2da, pág. 497, nos dice:

"*Firma*, según el Diccionario de la Academia, es el 'nombre y apellido o título de una persona que ésta pone con rúbrica al pie de un documento escrito de mano propia o ajena *para darle autenticidad o para obligarse a lo que en él se dice*'.

"A continuación, y temerosa la docta Corporación de haber excluído [sic] el caso frecuente de firma sin rúbrica, añade 'nombre y apellido, o título, de la persona que no usa rúbrica, o no debe usarla, puesto al pie de un documento'.

"*Media firma*, según el mismo autorizado testimonio: 'En los documentos oficiales, aquélla en que se omite el nombre de pila.'

"Y, por último, *Rúbrica*: 'Rasgo o conjunto de rasgos de figura determinada, que como parte de la firma pone cada cual después de su nombre o título.' 'A veces pónese la rúbrica sola; esto sin que vaya precedida del nombre o título de la persona que rubrica.' Por si quedase alguna duda, dice Cervantes en el *Quijote*: 'Poner mi rúbrica, que es lo mismo que firma.'

"O sea, que bajo estas tres formas, firma, media firma y rúbrica, se otorga, o autoriza. (El signo o el sello son aditamentos específicos de determinadas actuaciones oficiales o semioficiales.)." (Énfasis suplido y en el original.)

*firma, ya es un documento"*. E. Giménez Arnau, *Derecho Notarial*, EUNSA, (1a) pág. 679.

Y *sexto*, " '[h]ay una interdependencia entre ambos. La voluntad, el consentimiento, *se objetivan al firmar*; y lo *escrito debe ser reflejo de aquellos para que de la concordancia de elementos, surja el acto válido*. La relación vinculante, *la dará la firma*; de ahí su *extraordinaria importancia en el proceso instrumental'* ". Giménez Arnau, *op. cit.*, pág. 680.

## II

Estos principios nos impiden endosar las dos (2) premisas cardinales en que descansa la decisión mayoritaria, a saber: que las firmas no forman parte del contenido de una escritura y que la Ley Notarial de Puerto Rico no las exige en las *copias certificadas* de las escrituras. El comentario del Prof. Pedro Malavet Vega usado por la mayoría no sostiene esas conclusiones. Opinión mayoritaria, pág. 336. El ilustre notario Malavet Vega simplemente proclama el axioma rector de que las deficiencias que existan en el original de una escritura no pueden ser ni quedar subsanadas *en la copia* mediante la certificación notarial. Precisamente, conforme a la Ley Notarial de Puerto Rico la forma más precisa y correcta de que un Registrador descargue responsablemente su obligación de calificar la existencia real de esas firmas, su contenido y posibles incongruencias (apellidos distintos o incompletos) es requiriéndolas como parte de la *literalidad* total al momento de inscribir la escritura matriz (original) en el Protocolo.

Varias disposiciones de la Ley Notarial de Puerto Rico avalan esta ruta decisoria. Su Art. 13 preceptúa, en lo pertinente, que "[e]s escritura matriz la *original* que el notario ha de redactar sobre el contrato o acto sometido a su autorización, *firmada por los otorgantes*, por los testigos instrumentales, o de conocimiento en su caso, firmada, signada,

sellada y rubricada por el mismo notario". 4 L.P.R.A. sec. 2031. Más adelante, el Art. 16 ordena que "[l]os otorgantes y los testigos *firmarán la escritura* y además estamparán las letras iniciales de su nombre y apellido o apellidos al margen de cada una de las hojas del instrumento, las cuales rubricará y sellará el notario". 4 L.P.R.A. sec. 2034. Y según el Art. 39, "una copia certificada [de una escritura] es el traslado *literal, total* ... de[l] documento [original] otorgado ante notario, que libre éste o el que tenga legalmente a cargo su protocolo, con certificación respecto a la exactitud del *contenido* y al número de folios que contenga el documento, así como la firma, signo y rúbrica y, en todos los folios, el sello y rúbrica del notario autorizante". (Énfasis suplido.) 4 L.P.R.A. sec. 2061.

Al explicar el concepto y razón de ser de las copias certificadas, Giménez Arnau expone:

> El instrumento público original queda incorporado al protocolo del Notario y por esta razón *la eficacia del mismo* se opera *a través* de *traslados o reproducciones*. Estos traslados designados con el nombre de copias por la Ley y el Reglamento, suelen definirse con Fernández Casado: *Reproducción literal de un instrumento público protocolado, autorizada por Notario competente con las formalidades de derecho* ... y que se caracterizan —de acuerdo con su designación porque en ellas hay una autentificación semejante a la del instrumento original o matriz, mediante la imposición del signo, firma y rúbrica del Notario. Giménez Arnau, *op. cit.*, pág. 829.

Entre sus características y requisitos, destaca que la *reproducción literal* "debe corresponder *rigurosamente* con el original". Giménez Arnau, *op. cit.*, pág. 828.

Con su habitual especificidad, en su abarcador tratado notarial, Neri afirma:

> En general, llámase "copia" a toda reproducción o traslado de un escrito sacado a la letra. *Con relación a la escritura, "copia" es la reproducción de la matriz hecha a mano, mecanografiada o con placa fotográfica, y expedida con las formalidades legales;*

o bien es 'el testimonio *literal* de la escritura matriz, expedido en forma legal". La escritura original, o matriz, queda en el protocolo, como una garantía permanente de que el acto se ha realizado'; pero, para gobierno de las partes el escribano debe dar copia autorizada de la escritura que hubiere autorizado (Art. 1006), y esta copia *tendrá la misma virtud intrínseca* de que está revestido el protocolo, y por tanto, hará plena fe *erga omnes.* Y porque es un *trasunto de la escritura* otorgada en el protocolo notarial, esa copia "autorizada por notario competente con las formalidades de derecho" *es una pieza jurídica con categoría de instrumento público.* La copia no es, por tanto, una clase de escritura pública; *es la misma escritura pública objetivamente considerada.* Holgara decirlo, pero estas copias *"para ser tales y no constituir meros certificados...* deben *implicar una transcripción fiel del original o escritura matriz*; esto, con la advertencia de que se denomina también 'original' al testimonio de la escritura pública, como lo entendía nuestro codificador (nota al art. 997)". (Escolios omitidos y énfasis suplido.) A.I. Neri, *Tratado teórico y práctico de derecho notarial,* Buenos Aires, Ed. Depalma, 1970, Vol. 3, pág. 1083.

Más adelante nos ilustra sobre la doctrina que sostiene que la

" '... copia de la escritura matriz *debe ser reproducción íntegra de ésta para que surta todos los efectos que la ley le atribuye'....* [Se] concibe la idea de extracción *palabra por palabra* del libro del protocolo, y que tales testimonios, una vez autorizados, se reputan auténticos como las mismas escrituras públicas". (Énfasis suplido.) Neri, *op cit.*, pág. 1084.

Luego de exponer que la escritura certificada no puede ser una reproducción parcial, concluye que la "copia siempre está referida a la *literalidad de su especie,* es decir, a la letra de la matriz que le sirvió para la reproducción. *La copia debe expedirse íntegramente, y tal como aparece en el protocolo".* (Énfasis suplido.) Íd., pág. 1085.

## III

Admitir la mayoría, de un lado, que según el Art. 64 de la Ley Hipotecaria y del Registro de la Propiedad, 30

L.P.R.A. sec. 2267, la calificación se extiende a "las *formas extrínsecas* de los documentos presentados, la capacidad de los otorgantes y la *validez* de los actos y contratos contenidos en tales documentos" (énfasis suplido), y del otro, *no exigir la reproducción de las firmas* (mediante una copia fotostática o de igual género de la última página o páginas en cuestión, o la inclusión de los nombres específicos de los comparecientes precedidos del vocablo o la abreviatura de *firmado* (Fdo.)), es un contrasentido lógico y jurídico que niega que una copia certificada de una escritura —recordando a Neri y a Giménez Arnau, respectivamente—, "es la *misma* escritura pública"; antes sin la firma, "es sólo un papel".

Unimos como *Apéndices* a este disenso los *Exhibit* I(A) y I(B) del Registrador de la Propiedad recurrido ilustrativos de las formas correctas de dar cumplimiento fiel al requisito del Art. 39 de la Ley Notarial de Puerto Rico, *supra*, de que la copia certificada será un "traslado literal de la escritura". También unimos como Apéndice III, la página de la escritura que presentó el recurrente Western Federal Savings Bank sin las firmas.

Finalmente, no es fuente ni autoridad invocar el contenido y "comentario" de la Regla 49 del Reglamento Notarial de Puerto Rico, vigente *desde* el 1ro de agosto de 1995 (4 L.P.R.A. Ap. XXIV). Independientemente de si aplica o no a este recurso —problema de retroactividad que no abordamos— nada en la Ley Notarial de Puerto Rico refrenda la conclusión de que el notario puede prescindir de transcribir las firmas. A poco reflexionemos, el "comentario" choca contra la misma esencia del acto de certificación notarial. Si la copia certificada es el traslado *literal* de la escritura (Art. 39 de la Ley Notarial de Puerto Rico, *supra*), y "[l]a certificación de una copia será efectuada al *final o a la continuación del instrumento*" (énfasis suplido) —nos dice la Regla 49(A) del Reglamento Notarial de

Puerto Rico, 4 L.P.R.A. Ap. XXIV— ¿cómo concluir que las *firmas quedan excluidas?*

Con todo respeto, la opinión mayoritaria reduce la cuestión a sólo una "buena práctica notarial [y] aconseja que se mencionen al menos los nombres de los firmantes, según aparecen sus firmas en la escritura original, a los fines de evitar dudas y complicaciones futuras". Opinión mayoritaria, pág. 338. Así olvidan la realidad expuesta y, sobre todo, que a través de la *certificación* de la copia *integral* es que surge el reconocimiento de la fe notarial que hace en ese momento el notario, la cual, por imperativo, "[h]a de extenderse cumpliendo las formalidades del derecho, porque al igual que para la matriz del documento se exigen formalidades rituarias que den garantía al documento y uniformen la estructura externa del mismo ...". Giménez Arnau, *op. cit.*, pág. 828.

I1-A

tenían, manifiestan quedar bien enterados de su----
contenido, en el mismo se ratifican y firman al----
final, poniendo además sus iniciales al margen de--
todos los folios de este original.------------------
---De todo lo cual yo, el Notario Autorizante, DOY-
FE.-------------------------------------------------

*Ramon Trinidad Quiñones*
*Beatriz Lorza de Trinidad*
*Amalia Alvarado Rivera*

FIRMADO: Ramón Trinidad Quiñones
Beatriz Lanza Rivera
Amalia Alvarado Rivera

Firmado, Signado, Sellado y Rubricado:
Hay cancelados en el original los correspondientes sellos de rentas internas y del Impuesto Notarial que exige la Ley.------------------
Están escritas las iniciales de los comparecientes y el sello y la rúbrica del Notario en todos y cada uno de los folios. Esta escritura consta de ___cuatro (4)___ folios.------------------
CERTIFICO: Que la presente es una copia fiel y exacta de su original que con el número ___setenta y dos (72)___ obra en mi protocolo de instrumentos públicos del año en curso.------
EN TESTIMONIO DE LO CUAL y para entregar a la parte interesada expido la presente copia certificada que FIRMO, SIGNO, SELLO Y RUBRICO en San Juan de Puerto Rico, a ___9___ de ___julio___ de ___1993___.

Notario Público

$20    A    $20
4994542

50¢    B    50¢
6509576

6509576
50¢    B    50¢

RG-93-523              Apéndice
                       II-B

en este día, garantizado con la presente hipoteca.

Es acuerdo de las partes aquí comparecientes, que

el acreedor hipotecario aquí compareciente, es el

encargado de cancelar y saldar las hipotecas------

relacionadas en este párrafo, obtener los pagarés-

hipotecarios y hacer las correspondientes escritu-

ras de cancelación de hipoteca.---------------------

---Se ratifican las partes en el total contenido--

de la presente escritura y Yo, el Notario, VUELVO

A DAR FE.------------------------------------------

---En este estado se aclara que los deudores ---
hipotecarios, Pablo Castrello Altieri e Ivelisse-
Quintana Mercado, son solteros y además que son--
residentes de Guaynabo y Bayamón, Puerto Rico,--
respectivamente.-----------------------------------

---Se aclara además que la deudora hipotecaria---
es también conocida por Gladys Ivelisse Quintana--
Mercado, yo la Notario, REPITO LA FE.--------------

---FIRMADOS: PABLO CASTRELLO ALTIERI, GLADYS -----
IVELISSE QUINTANA·MERCADO, FELIPE RIVERA TORRES.---

---FIRMADO, SIGNADO, SELLADO Y RUBRICADO:--------
NAY DEL CARMEN RODRIGUEZ GONZALEZ, Notario Público.

---Concuerda bien y fielmente con el original de su
contenido obrante en mi protocolo de instrumentos
públicos del año en curso a que me remito, la cual
contiene   CATORCE---   folios.  en fe de ello y a
petición de el acreedor hipotecario  libro esta pri--
mera copia certificada en la misma fecha de su----
otorgamiento.  Hay cancelados los correspondientes
sellos forenses para el Colegio de Abogados, así--
como los de Rentas Internas, juntamente con el de
la Notaría, DOY FE.--------------------------------

                              NOTARIO PUBLICO

- 22 -

Apéndice
(III)

---

——I, the Notary, DO HEREBY ATTEST.———————————
——Yo, el Notario, DOY FE. ———————————————

--That I personally know the appearing party that
--Que conozco personalmente al compareciente que

represents the Lender, and that I have ascertain
representa al Prestador, y que me he asegurado --

the identity of the appearing Borrowers by the --
de la identidad de los comparecientes Deudores --

utilization of the following mean of suplementary
mediante la utilización de los siguientes medios

identification:--------------------------------------
supletorios de identificación:---------------------

--Driver Licenses #519655 issued to Gamaliel Acevedo Agosto
--Licencias de Conducir #519655 expedida a Gamaliel Acevedo

y #648488 issued to Guillermina Rivera Cintron, both with--
Agosto y #648488 expedida a Guillermina Rivera Cintron, ambas

theirs photos and duly signed. ---------------------------------
con sus fotografias y debidamente firmadas. ------------------

------------------------------------------------------
------------------------------------------------------

------------------------------------------------------
------------------------------------------------------

------------------------------------------------------
------------------------------------------------------

--I, the Notary, AGGAIN ATTEST.--------------------
--Yo, el Notario, REPITO LA FE.--------------------