Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BANCO POPULAR DE PUERTO RICO<br><br>Apelado<br><br><br>V.<br><br><br>VIRGINIA CANALES RODRÍGUEZ; LUZ M. BARRETO CANALES<br><br>Apelante | KLAN202500270 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br><br>Caso Núm.:<br>DCD2007-2550 (401)<br><br>Sobre:<br>Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez ponente

### SENTENCIA

En San Juan, Puerto Rico, a 19 de mayo de 2025.

Comparece la Sra. Luz M. Barreto Canales (señora Barreto Canales o peticionaria) mediante un escrito intitulado *Apelación Civil* en el que nos solicita que revoquemos una Orden emitida el 12 de febrero de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). [2] Allí, el foro de instancia denegó la *Moci[ó]n Solicitando Orden de Paralizaci[ó]n de Embargo y Solicitud de Desestimaci[ó]n y/o Intervenci[ó]n* presentada por la peticionaria para detener los trámites promovidos por el Banco Popular de Puerto Rico (Banco o recurrido) para la ejecución de sentencia y venta judicial de una propiedad inmueble. Conjunto con la *Apelación Civil,* la peticionaria presentó una *Moci[ó]n Urgente Solicitando Orden en Auxilio de Jurisdicci[ó]n.*

El 1 de abril de 2025, emitimos una *Resolución* en la que declaramos Ha Lugar el petitorio de auxilio de jurisdicción y, tras

---

[1] Archivada y notificada en autos el 20 de febrero de 2025.
[2] Apéndice del Recurso de *Apelación Civil,* Anejo 100, págs. 285-286.

examinar su naturaleza legal, acogimos el recurso como un *Certiorari*, por tratarse de un remedio post Sentencia. En adición, le concedimos diez (10) días al recurrido para que expusiera su posición en torno a los méritos del recurso. Oportunamente, el 9 de abril de 2025, el apelado presentó una *Oposición a que se Expida Certiorari Civil.*

Por los fundamentos que expondremos a continuación, expedimos el recurso presentado y *revocamos* el dictamen del foro primario a los fines de que se diluciden las controversias en cuanto a la titularidad sobre la propiedad inmueble en cuestión y el alcance del embargo sobre la misma.

**-I-**

El presente caso tuvo su génesis el 27 de agosto de 2007, cuando RG Mortgage presentó una *Demanda* de Cobro de Dinero y Ejecución de Hipoteca en contra de la Sra. Virginia Canales Rodríguez (señora Canales Rodríguez) y sus hijos, la peticionaria, Wilfredo, Osvaldo, Leida Noemí, Luis Antonio, Ariel y Héctor Barreto Canales.[3] En esencia, la referida entidad financiera adujo que entre ambas partes se suscribió un contrato de préstamo por la suma de $85,000.00, más intereses al 7.250% anual, garantizado por una hipoteca constituida sobre una propiedad en el municipio de Vega Alta mediante la Escritura Núm. 397, otorgada el 18 de septiembre de 2001 ante el notario Heberto J. de Vizcarrondo Armstrong. Tras declarar la deuda vencida, la institución financiera solicitó al TPI que se ejecutara el referido gravamen.

Por su parte, el 6 de noviembre de 2007, la señora Canales Rodríguez, la peticionaria y Héctor Barreto Canales contestaron la demanda y, a su vez, presentaron una reconvención.[4] Arguyeron que RG Mortgage indujo en error a la señora Canales Rodríguez para otorgar el pagaré hipotecario, al conocer que ésta era una persona de

---

[3] *Íd.,* Anejo 2, págs. 2-4.
[4] *Íd.,* Anejo 2, págs. 5-6.

edad avanzada con poca escolaridad. Además, sostuvieron que el referido pagaré que suscribió la señora Canales Rodríguez no era válido por no haber sido autorizado por sus hijos, quienes eran cotitulares de la propiedad y cuya existencia era de conocimiento o debió haber sido de conocimiento para la entidad financiera. Estos advinieron en la titularidad del inmueble por herencia de su señor padre, y esposo de la señora Canales Rodríguez, el Sr. Wilfredo Barreto García.

El 14 de noviembre de 2007, RG Mortgage solicitó el desistimiento de la demanda en contra de los hijos de la señora Canales Rodríguez.[5] Siendo así, el 29 de noviembre de 2007, el foro primario dictó *Sentencia Parcial* y ordenó el cierre y archivo del caso en cuanto a éstos.[6]

De igual forma, el 10 de diciembre de 2007, RG Mortgage solicitó continuar los procedimientos en contra de la señora Canales Rodríguez como una acción personal en Cobro de Dinero.[7] Ello por cuanto, a la fecha de la presentación de la demanda, no se logró la inscripción de la hipoteca en el Registro de la Propiedad.

En adición, solicitó la desestimación de la reconvención presentada y arguyó que, conforme a la Escritura Núm. 402, otorgada el 15 de diciembre de 1998, ante la notario Gloria Cardona Aldarondo (Escritura Núm. 402), todos los cotitulares de la propiedad le vendieron su participación a la señora Canales Rodríguez, por lo que ella era la única titular con facultad de gravar el inmueble. De igual forma, indicó que el planteamiento sobre haber inducido a error a la señora Canales Rodríguez era frívolo.

De su parte, el 8 de enero de 2008, la señora Canales Rodríguez presentó una *Moción en Oposición a que se Desestime la*

---

[5] *Íd.,* Anejo 4, pág. 7.
[6] *Íd.,* Anejo 16, pág. 66.
[7] *Íd.,* Anejo 9, págs. 24-26.

*Reconvención.*[8] En ella, argumentó que no era correcta la aseveración de RG Mortgage en cuanto a que adquirió por compraventa las participaciones hereditarias de todos sus siete (7) hijos, sino únicamente las participaciones de tres (3) de ellos; a saber, Leida Noemí, Osvaldo y Wilfredo Barreto Canales. Por consiguiente, tanto ella como sus cuatro (4) hijos restantes, a saber, Luis Antonio, Ariel, Héctor y la peticionaria, eran cotitulares en común proindiviso del inmueble objeto del presente caso.

El 19 de febrero de 2008, RG Mortgage presentó una moción con fecha del 13 de febrero de 2008, en solicitud de sentencia sumaria. Acompañó junto con su solicitud las copias del pagaré hipotecario y la escritura de hipoteca, y la declaración jurada de un oficial de RG Mortgage, quien certificó las sumas como adeudadas, líquidas y exigibles.

Tras varios trámites procesales, entre los cuales la señora Canales Rodríguez se opuso a la solicitud de sentencia sumaria, el 6 de mayo de 2008, se celebró la Conferencia con Antelación a Juicio.[9] Según surge de la minuta que obra en el expediente, la señora Canales Rodríguez se allanó a la solicitud de sentencia sumaria y expresó que solicitaría un plan de pago. Además, desistió de la reconvención presentada. Por su parte, RG Mortgage indicó que la solicitud de sentencia era en cobro de dinero y no por ejecución de hipoteca.

Así las cosas, el 6 de mayo de 2008, el TPI dictó *Sentencia Sumaria*, declaró Con Lugar la demanda presentada y condenó a la señora Canales Rodríguez al pago de la deuda.[10]

El 11 de diciembre de 2008, el recurrido se sustituyó en los derechos de RG Mortgage.[11] Asimismo, el 7 de julio de 2009, solicitó

---

[8] *Íd.,* Anejo 13, págs. 61-62.
[9] *Íd.,* Anejo 33, pág. 116.
[10] *Íd.,* Anejo 35, págs. 119-122. Archivada y notificada en autos el 29 de mayo de 2008.
[11] *Íd.,* Anejo 36, pág. 123.

una orden de embargo sobre la propiedad inmueble. El 23 de julio de 2009, el TPI concedió la solicitud y ordenó la anotación del embargo en el Registro de la Propiedad.[12]

El 2 de noviembre de 2009, el Banco presentó una *Moci[ó]n sobre Ejecuci[ó]n de Embargo.*[13] Allí, solicitó un mandamiento para proceder con la subasta de la propiedad inmueble gravada, ante la falta de pago por parte de la señora Canales Rodríguez.

Ante ello, el 13 de noviembre de 2009, la señora Canales Rodríguez presentó una *Moci[ó]n Objetando Embargo.*[14] En ella, esbozó que la orden de embargo emitida por el TPI afectaba los derechos propietarios de otras personas que no formaban parte del pleito ni eran deudores de RG Mortgage. Reiteró que lo anterior se había expuesto desde su contestación a la demanda y especificó que, junto a ella, eran titulares de la propiedad sus hijos Héctor Barreto Canales y la peticionaria. No obstante, el 25 de noviembre de 2009, el TPI emitió *Orden sobre Ejecución de Embargo* y ordenó la expedición del Mandamiento para dicha ejecución.[15]

Ante esto, el 15 de diciembre de 2009, la señora Canales Rodríguez presentó una *Moci[ó]n Urgente Objetando Orden sobre Ejecuci[ó]n de Embargo* y esgrimió nuevamente sus planteamientos sobre la existencia de otros propietarios que no formaban parte del pleito y quienes se verían afectados por la orden judicial.[16] Anejó junto con la referida moción, *inter alia*, la escritura en la que adujo que solo adquirió los derechos hereditarios de tres (3) de sus siete (7) hijos.

Por su parte, el 17 de diciembre de 2009, el Banco presentó una moción en la que se allanó a la objeción de la señora Canales

---

[12] *Íd.,* Anejo 39, pág. 128.
[13] *Íd.,* Anejo 41, págs. 130-131.
[14] *Íd.,* Anejo 42, pág. 132.
[15] *Íd.,* Anejo 44, págs. 134-135. Archivada y notificada en autos el 11 de diciembre de 2009.
[16] *Íd.,* Anejo 45, págs. 136-137.

Rodríguez y solicitó, a su vez, que se dejaran sin efecto la orden y mandamiento de ejecución de embargo.[17] Siendo así, el 28 de diciembre de 2009, TPI dejó sin efecto los referidos dictámenes.[18]

Tras casi una década, el 25 de abril de 2019, el Banco solicitó nuevamente la anotación de un embargo sobre la propiedad inmueble. Asimismo, el 7 de mayo de 2019, y luego de haber sido ordenado por el TPI, presentó una *Moci[ó]n en Cumplimiento de Orden* en la que acompañó una Certificación Registral con fecha del 21 de marzo de 2018.[19] En ésta surge la señora Canales Rodríguez como la única titular registral del inmueble. Así las cosas, el 20 de mayo de 2019, el TPI emitió una nueva orden de embargo, ante la solicitud hecha por el recurrido el 25 de abril de 2019 a esos efectos.[20]

El 5 de junio de 2019, habiéndose anotado el gravamen, el Banco solicitó la ejecución de éste.[21] El 15 de agosto de 2019, tras haberse ordenado por el TPI, se celebró la venta judicial de la propiedad en pública subasta, la cual fue adjudicada al recurrido. Dicha adjudicación fue confirmada por el foro primario el 20 de agosto de 2019.[22]

Sin embargo, el 16 de agosto de 2019, la señora Canales Rodríguez presentó una petición de quiebra ante el Tribunal de Quiebras de Estados Unidos, por lo que, de conformidad con la ley federal, los procedimientos de la ejecución del embargo fueron paralizados. Empero, el 5 de junio de 2024, el Tribunal de Quiebras desestimó la referida petición.[23]

Siendo así, el 2 de agosto de 2024, tras el dictamen del foro federal y en aras de continuar con los procedimientos, el recurrido

---

[17] *Íd.,* Anejo 46, pág. 153.
[18] *Íd.,* Anejo 50, pág. 158. Archivada y notificada en autos el 4 de enero de 2010.
[19] *Íd.,* Anejo 55, págs. 164-166.
[20] *Íd.,* Anejo 57 y 58, págs. 169 y 170. Archivada y notificada en autos el 21 de mayo de 2010.
[21] *Íd.,* Anejo 60, pág. 174.
[22] *Íd.,* Anejo 71, págs. 199-200.
[23] *Íd.,* Anejo 81, pág. 215.

solicitó al TPI que restituyera el pagaré hipotecario contra la propiedad y dejara sin efecto la venta judicial.

El 18 de septiembre de 2024, el TPI emitió una *Orden* y un *Mandamiento de Restitución de Pagaré.*[24] Asimismo, el 24 de octubre de 2024, el foro de instancia emitió los dictámenes por virtud de los cuales dejó sin efecto la venta judicial celebrada el 15 de agosto de 2019.[25]

Consecuentemente, el 15 de noviembre de 2024, el recurrido presentó una moción en la que solicitó que se ordenara el embargo sobre el inmueble, así como la expedición de un mandamiento para dirigir la anotación de dicho gravamen en el Registro de la Propiedad.[26] El 10 de diciembre de 2024, el TPI emitió tanto la orden,[27] como el mandamiento del embargo.[28]

Posteriormente, el 8 de enero de 2025, el foro primario emitió una *Orden de Ejecución de Sentencia* contra el inmueble.[29] Ese mismo día, la peticionaria presentó una *Moción Solicitando Orden de Paralización de Embargo y Solicitud de Desestimación y/o Intervención* con fecha del 22 de enero de 2025.[30]

En esencia, solicitó intervenir en el pleito y argumentó que la deuda contra su señora madre, la señora Canales Rodríguez, quien ya había fallecido, no podía ser ejecutada contra el inmueble. Esbozó que, según surge de la Escritura Núm. 402, la señora Canales Rodríguez adquirió únicamente las participaciones de sus hijos Leida Noemí, Osvaldo y Wilfredo Barreto Canales. Cónsono con lo anterior, la señora Barreto Canales indicó que nunca vendió su participación hereditaria a su señora madre, por lo que la Certificación Registral

---

[24] *Íd.,* Anejo 84, págs. 237-238. Expedido el 20 de septiembre de 2024.
[25] *Íd.,* Anejo 89, págs. 248 y 253.
[26] *Íd.,* Anejo 90, págs. 254-256.
[27] *Íd.,* Anejo 92, pág. 261.
[28] *Íd.,* págs. 259-260. Expedido el 11 de diciembre de 2024.
[29] *Íd.,* Anejos 96 y 97, págs. 272, 274 y 273. Archivada y notificada en autos el 23 de enero de 2025.
[30] *Íd.,* Anejo 98, págs. 277 y 280.

que el Banco presentó no exponía correctamente la realidad jurídica de la propiedad e inducía a error al tribunal.

En adición, arguyó que el pagaré que el recurrido solicitó ejecutar fue constituido ilegalmente por no contar con la firma de los demás cotitulares de la propiedad. Asimismo, apuntó que nunca fue emplazada, a pesar de ser titular de la propiedad, y que todas las gestiones dirigidas a embargar la misma eran ilegales, por lo que solicitó la paralización de los procedimientos de embargo y el señalamiento de una vista para testificar sobre sus derechos propietarios, según surgen de la Escritura Núm. 402.

El 29 de enero de 2025, el recurrido presentó una *Oposición a Moción Solicitando Orden de Paralización de Embargo y Solicitud de Desestimación [y]/o Intervención.* [31] En síntesis, expuso que la Certificación Registral acreditaba que la señora Canales Rodríguez era la única titular de la propiedad en cuestión. También, hizo referencia a un estudio de título juramentado, preparado el 24 de enero de 2025. Conforme a ambos, sostuvo que no existe otro titular registral sobre la propiedad además de la señora Canales Rodríguez.

Así las cosas, el 12 de febrero de 2025, el TPI emitió una *Orden* en la que declaró No Ha Lugar la solicitud de la peticionaria y expresó que de la Certificación Registral surgía que la señora Canales Rodríguez era la única titular registral de la propiedad.[32] Asimismo, ordenó la continuación de los procedimientos de ejecución de sentencia.[33]

El 20 de febrero de 2025, la señora Barreto Canales presentó una *R[é]plica Urgente a Oposici[ó]n Reiterando Solicitud de Orden de Paralizaci[ó]n y Solicitando Urgente [sic] de Vista.* En reiteración de los argumentos que había presentado, expuso el Registrador de la

---

[31] *Íd.,* Anejo 99, págs. 281-283
[32] *Íd.,* Anejos 100 y 101, págs. 285, 284 y 286. Archivada y notificada en autos el 20 de febrero de 2025.
[33] *Íd.,* Anejo 101, pág. 287.

Propiedad, al calificar la transmisión del título contenido en la Escritura Núm. 402, se equivocó al anotar que la señora Canales Rodríguez adquirió las participaciones hereditarias sobre la propiedad de todos sus hijos.

Específicamente, adujo que a la escritura comparecieron los hijos de la señora Canales Rodríguez divididos como segunda y tercera parte. Asimismo, precisó que compareció a la referida escritura como segunda parte y citó el párrafo sexto de la escritura que, según arguyó, indica que fueron los comparecientes de tercera parte quienes convinieron vender a la señora Canales Rodríguez su participación hereditaria.

En adición, expresó que el Banco no rebatió el planteamiento referente a su titularidad sobre la propiedad e indicó que éste conocía del error en el Registro de la Propiedad, por lo que estaba impedido legalmente de ejecutar el embargo contra el inmueble. Acompañó su escrito con una copia de la Escritura Núm. 402.

El 5 de marzo de 2025, el TPI ordenó al recurrido que se expresara en cuanto a la moción presentada por la señora Barreto Canales. Ese mismo día, la peticionaria presentó una *Moci[ó]n Solicitando Reconsideraci[ó]n* a la orden del foro de instancia en la que denegó paralizar los procedimientos de embargo.[34] Paralelamente, se publicó un *Edicto de Subasta* expedido por la Alguacil del TPI que notificaba la celebración de la venta judicial de la propiedad el 3 de abril de 2025.[35]

El 12 de marzo de 2025, el Banco presentó una *Moción en Cumplimiento de Orden* y reiteró su posición en cuanto a que la Certificación Registral y el estudio de título acreditaban que la única

---

[34] *Íd.,* Anejo 105, págs. 303-308.
[35] *Íd.,* Anejo 103, págs. 299-300.

titular registral de la propiedad lo era la señora Canales Rodríguez, por lo que procedía el trámite de ejecución de la sentencia.[36]

Por su parte, el 19 de marzo de 2025, la peticionaria presentó una *Moci[ó]n Urgente Solicitando Orden de Paralizaci[ó]n de Subasta para Evitar Daño Irreparable*.[37] En ella, solicitó la paralización de la subasta señalada para el 3 de abril y reiteró que su celebración constituiría un perjuicio irreparable en la forma de un embargo ilegal de la propiedad de partes indispensables no incluidas en el pleito.

El 12 de marzo de 2025, el TPI denegó la solicitud de reconsideración presentada por la señora Barreto Canales.[38] Por otro lado, el 20 de marzo de 2025, el foro de instancia declaró No Ha Lugar la moción de paralización presentada el 19 de marzo de 2025.[39]

Inconforme, la peticionaria acude ante nos mediante el recurso que nos ocupa y le imputó al foro primario la comisión de los siguientes errores:

> [1.] ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL PERMITIR QUE SE EJECUTARA UNA SENTENCIA LUEGO DE TRANSCURRIDO[S] 17 AÑOS DE DICTADA LA MISMA, SIN QUE SE LE SOLICITARA UN PERMISO PARA EJECUTAR LA SENTENCIA, NOTIFIC[Á]NDOLE A TODAS LAS PARTES AFECTADAS.
>
> [2.] ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE PARALIZACI[Ó]N DEL PROCEDIMIENTO DE EMBARGO PRESENTADA POR LA SRA. LUZ M. BARRETO CANALES, ESTO A PESAR DE QUE HA QUEDADO DEMOSTRADO QUE OSTENTA UNA PARTICIPACI[Ó]N EN LA TITULARIDAD DE LA PROPIEDAD QUE SE PRETENDE EMBARGAR Y NO SE LA HA GARANTIZADO SU PARTICIPACI[Ó]N DENTRO DEL PROCESO.

En vista de los errores imputados, procedemos a discutir las normas jurídicas aplicables a este recurso.

**-II-**

---

[36] *Íd.,* Anejo 106, págs. 309-312.
[37] *Íd.,* Anejo 107, págs. 313-314.
[38] *Íd.,* Anejo 109, pág. 317. Archivada y notificada en autos el 20 de marzo de 2025.
[39] *Íd.,* Anejo 110, págs. 319-320. Archivada y notificada en autos el 26 de marzo de 2025.

**-A-**

El *certiorari* es un recurso extraordinario cuya característica se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); véase, además, *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403-404, (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020), *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). En consecuencia, este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

La Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que este Tribunal posee autoridad para expedir el auto de *certiorari* sobre materia civil. *Scotiabank de Puerto Rico v. ZAF Corporation, et al.*, 202 DPR 478, 488 (2019). Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, prescribe los criterios que debemos tomar en consideración al momento de determinar si expedimos o denegamos el auto solicitado:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De no estar presente algunos de estos criterios, corresponde abstenernos de expedir el auto de *certiorari.*

**-B-**

La Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, tiene como base el principio establecido en nuestra Constitución que prohíbe que una persona sea privada de su libertad o propiedad **sin un debido proceso de ley**. Art. II, Sec. 7, Const. ELA. Una parte indispensable es aquella sin cuya presencia no se puede adjudicar el pleito debido a que sus derechos quedarán afectados. R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil*, 6ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2017, pág. 165. Por ello, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda".

No obstante, no se trata de cualquier interés en el pleito, puesto que debe ser un interés que impida la concesión de un derecho adecuado sin afectar o destruir radicalmente los derechos de la parte. *López García v. López García*, 200 DPR 50, 64 (2018). A la vez, tiene que ser un interés real e inmediato, no futuro ni meras especulaciones. *Íd.*

Esto responde a tres principios: la protección constitucional que impide que una persona sea privada de su libertad y propiedad sin un debido proceso de ley; la necesidad de que el dictamen judicial sea completo y evitar la multiplicidad de pleitos. *FCPR v. ELA et al.*, 2023 TSPR 26, 211 DPR 521, __ (2023); *Ex parte, RPR & BJJ*, 207 DPR 389, 407 (2021); *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014).

El Tribunal Supremo estableció que, "[a]l determinar si una persona es una parte indispensable en un pleito, se requiere un

enfoque pragmático e individualizado, a tenor con las particularidades de cada caso." *FCPR v. ELA et al., supra*; véase, además, *García Colón et al. v. Sucn. González*, 178 DPR 527, 549 (2010). En tal sentido, el tribunal deberá evaluar los intereses envueltos en cada caso y distinguir entre los diversos géneros de casos. Esto de acuerdo con el "tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad", *FCPR v. ELA et al., supra*, (citando a *Deliz et als. v. Igartúa, et als.,* 158 DPR 403, 134 (2003)); véase, además, *Sánchez v. Sánchez*, 154 DPR 645, 678 (2001), y, "si el tribunal 'podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente'". *FCPR v. ELA et al., supra,* (citando a *Pérez Rosa v. Morales Rosado,* 172 DPR 216, 223 (2007)).

A su vez, es norma trillada que la ausencia de una parte indispensable priva de jurisdicción al tribunal dado que la sentencia es nula. *FCPR v. ELA et al., supra*; véase, además, *Unysis PR, Inc. v. Ramallo Brother Printing, Inc.*, 128 DPR 842, 859 (1991). Por ello, el Máximo Foro judicial estableció lo siguiente:

> La falta de parte indispensable constituye un planteamiento tan relevante y vital que puede presentarse en cualquier momento, es decir, se puede presentar por primera vez en apelación e, **incluso, un tribunal apelativo puede suscitarlo *sua sponte*, ya que[,] en ausencia de parte indispensable, el tribunal carece de jurisdicción**.
>
> *Romero v. SLG Reyes*, 164 DPR 721, 733 (2005) (Énfasis nuestro).

Cuando se determina que una parte indispensable está ausente en el pleito, la acción debe ser desestimada sin perjuicio. *Íd.* pág. 734. Excepto, a solicitud de parte, y sujeto a que las circunstancias lo permitan y el tribunal pueda ejercer jurisdicción sobre dicha parte indispensable ausente, se podrá incluir en el pleito sin desestimar la acción. *Cirino González v. Adm. Corrección et al.*, *supra*, págs. 46-47.

**-C-**

En otro extremo, una hipoteca es "un derecho real que sujeta o vincula lo hipotecado a que eventualmente su titular pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación dineraria". *Banco Popular v. Registrador*, 181 DPR 663, 673 (2011). Una de las características de las hipotecas es que son accesorias, ya que la hipoteca sirve de garantía para el acreedor de la obligación principal asegure su crédito ante el incumplimiento con la deuda. *Liechty v. Desartés Saurí*, 109 DPR 496, 501-502 (1980). Es decir, el titular del derecho real posee la facultad de recobrar lo adeudado mediante la enajenación de la cosa dada en garantía de su crédito, tal como el deudor consintió al otorgar el contrato de hipoteca. *Íd.*

El titular del derecho real posee esta facultad de enajenar la garantía sin importar que el poseedor sea una tercera persona. L. R. Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra ed., San Juan, Ed. Jurídica Editores, 2012, pág. 485. A saber, una vez vencido el crédito hipotecario en todo o en parte sin que sea satisfecho por el deudor, el acreedor tiene derecho a ejercer los mecanismos que le provee el ordenamiento jurídico para satisfacer el crédito hipotecario, como el procedimiento sumario y ordinario ejecución hipotecaria. *Íd.*, págs. 567-568.

**-D-**

Por otra parte, es pertinente para el asunto ante nos discutir la normativa referente a la comunidad de bienes y su integración con la figura de la hipoteca. La comunidad de bienes surge "cuando la

propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas". Art. 326 del Código Civil de 1930, 30 LPRA sec. 1271.[40]

Esta figura puede surgir por razón de pacto o contrato entre dos o más personas con capacidad para contratar; por razón de legislación especial; **o cuando se establece la comunidad hereditaria**. Todos los comuneros tienen derecho al pleno disfrute de la cosa sujeta a la comunidad, así como lograr acuerdos relacionados a su administración por medio de los votos obtenidos por la mayoría de los partícipes. *Íd.,* arts. 329 y 334, 30 LPRA secs. 1274 y 1277.

No obstante, cuando el acto que se pretende es uno de alteración, entonces, se requerirá el acuerdo unánime de los comuneros para que el mismo sea válido. Entre los actos que constituyen alteración se contempla cambiar la naturaleza del objeto, enajenar la cosa o **gravarla**. 30 LPRA secs. 1276, 1278. Un comunero no podrá unilateralmente hipotecar la propiedad perteneciente a la comunidad de bienes. Para ello, requerirá haber obtenido el consentimiento de los demás co-titulares de la propiedad sobre la cual se pretende establecer el gravamen.

El artículo 333 del Código Civil, 30 LPRA sec. 1278, dispone, en lo aquí pertinente, que:

> Todo condueño tendrá la plena propiedad de su parte y la de los frutos y utilidades que le correspondan, pudiendo en su consecuencia enajenarla, cederla o **hipotecarla**, y aun sustituir otro en su aprovechamiento y darla en arrendamiento, salvo si se tratare de derechos personales, **pero el efecto de la . . . hipoteca con relación a los condueños, estará limitado a la porción que se les adjudique en la división al cesar la comunidad**. (Énfasis nuestro).

El Tribunal Supremo ha interpretado este artículo a los efectos de que una hipoteca otorgada por uno de varios co-titulares en común pro indiviso de una propiedad, **solamente gravará el interés**

---

[40] Por tratarse de hechos ocurridos con anterioridad a la aprobación y vigencia del nuevo Código Civil (Ley Núm. 55 de 1 de enero de 2020), nos limitaremos a discutir las disposiciones aplicables y correspondientes al Código Civil de 1930.

**del hipotecante en ésta y no la propiedad en su totalidad**. *Martínez v. Pirallo*, 61 DPR 91, 93 (1942). Se requerirá el consentimiento unánime de los comuneros para que el gravamen recaiga sobre la totalidad de la propiedad. Ausente este consentimiento, el acreedor sólo tendrá un derecho real de hipoteca sobre la participación de la propiedad que le corresponda al co-titular que compareció a otorgar la correspondiente escritura.

Cónsono con lo anterior, es preciso distinguir la comunidad hereditaria de la comunidad de bienes. En *Kogan v. Registrador*, 125 DPR 636, 651-652 (1990), el Tribunal Supremo expresó lo siguiente:

> [En la comunidad de bienes] coinciden varios titulares sobre uno o más bienes determinados, mientras que la comunidad hereditaria se refiere a la cotitularidad sobre un patrimonio relicto con sus múltiples elementos de activo y pasivo. Los interesados tienen sobre el patrimonio del causante la titularidad de una cuota en abstracto, pero no sobre bienes en particular. Cada heredero, mientras la partición no se efectúa, tiene simplemente un derecho en el complejo hereditario. '[C]on la aceptación cada coheredero adquiere un derecho independiente sobre la herencia . . . y la cuota que en ella le corresponde ingresa inmediatamente en su patrimonio como un valor **autónomo e independiente que sólo a él pertenece** y del que, por tanto, puede disponer con entera libertad.'"

*Íd.,* (citas omitidas). (Énfasis en el original).

**-E-**

El tercero registral es la figura a quien se le reconocen derechos propietarios al adquirir un derecho real confiando en las constancias del Registro de la Propiedad, aun cuando la realidad extraregistral no coincida con las mismas.

Sobre los requisitos necesarios para ser considerado un tercero registral y que los derechos propietarios queden protegidos, el Artículo 105 de la Ley Núm. 198 de 8 de agosto de 1979, mejor conocida como la *Ley Hipotecaria y del Registro de la Propiedad*, según enmendada, 30 LPRA sec. 2355,[41] establece lo siguiente:

---

[41] Si bien la citada ley quedó derogada por la Ley Núm. 210-2015, mejor conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, según enmendada, 30 LPRA secs. 6001, *et seq*, hacemos referencia a ella por cuanto los hechos del presente caso ocurrieron durante su vigencia.

[E]l tercero que[,] de buena fe y a título oneroso[,] adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo[,] será mantenido en su adquisición, una vez haya inscrito su derecho, cuando por cualquier razón resulte inexacto el Registro, bien sea que se rescinda, resuelva o anule el título del otorgante en virtud de causas que no resulten clara y expresamente del propio Registro, o que existan sobre la finca acciones o títulos de dominio o de otros derechos reales que no estén debidamente inscritos.

[...]

La buena fe del tercero se presume siempre mientras no se prueba que al adquirir conocía la falta de exactitud del Registro.

En *Banco de Santander v. Rosario Cirino*, 126 DPR 591 (1990), el Tribunal Supremo analizó los requisitos de esta figura. En particular, indicó que la exigencia de buena fe de quien reclama ser un tercero registral y, a su vez, exige la protección jurídica concedida, debe demostrar que ejerció un grado razonable de diligencia para corroborar las constancias del Registro. Por tal razón, quien alega ser acreedor de la protección tiene que demostrar que ejerció algún grado de diligencia para intentar conocer las circunstancias del derecho que interesa adquirir. En otras palabras, para poder ignorar de buena fe la anomalía registral, se requieren gestiones afirmativas de diligencia.

Sin embargo, el grado de diligencia requerido dependerá de las circunstancias particulares de cada individuo. Pertinente al asunto ante nos, el Máximo Foro distinguió la diligencia requerida de un ciudadano común y corriente con la que se requiere de un banco, por estos poseer la pericia y el dominio suficientes dentro de los parámetros de sus actividades económicas. Específicamente, el Tribunal Supremo expresó como sigue:

Una entidad bancaria dedicada al financiamiento conoce los trámites necesarios para que los negocios-tanto en el ámbito civil como en el registral-puedan llevarse a cabo de la forma más acorde con el ordenamiento jurídico. **Tiene las destrezas, el personal adecuado y los recursos económicos para detectar cualquiera anomalía en el trámite que efectúa**.

*Íd.,* a la pág. 612. (Énfasis nuestro).

Es decir, a quienes poseen un conocimiento especializado mayor que el de otros ciudadanos en el trámite de negocios jurídicos, nuestro ordenamiento jurídico les requiere gestiones de diligencia más exhaustivas para poder ameritar la protección registral.

**-F-**

Asimismo, es importante abordar, brevemente, algunos aspectos referentes a la función calificadora de los Registradores de la Propiedad.

Sabido es que éstos ocupan la facultad de calificar los documentos que se presenten en el Registro de la Propiedad para su inscripción. Dicha facultad emana del conocido principio de legalidad de nuestro derecho registral inmobiliario, cuyo propósito es que solo tengan acceso al Registro de la Propiedad aquellos títulos que son válidos y perfectos porque reúnen los requisitos establecidos por ley o reglamento. *Rolón Adorno v. Registrador*, 207 DPR 361, 370 (2021); véase, además, *United Surety v. Registradora*, 192 DPR 187, 201 (2015); *Western Fed. Savs. Bank v. Registrador*, 139 DPR 328, 332-33 (1995).

En específico, la calificación requerida a los Registradores de la Propiedad de los documentos notariales que se presentan en el Registro se limita a sus formas extrínsecas, la validez de los actos y contratos en ellos contenidos, y la capacidad jurídica de sus otorgantes. Art. 64 de la Ley Hipotecaria.

Ahora bien, nuestro Tribunal Supremo ha sido claro al enfatizar que los Registradores, al realizar las calificaciones, no ejercen funciones adjudicativas. Sobre lo anterior, nuestro Alto Foro ha expresado lo siguiente:

> **[L]a calificación registral no tiene por objeto 'declarar la existencia o inexistencia de un derecho dudoso o controvertido entre partes contendientes**, sino simplemente publicar, mediante su inscripción, un derecho real o situación jurídica inmobiliaria[.]' . . . [E]n síntesis[,] el fin de la calificación 'se reduce a determinar si un título es o no inscribible, y nada más.'

*Preciosas Vistas del Lago v. Registrador*, 110 DPR 802, 810 (1981) (citando a Roca Sastre, *Derecho Hipotecario*, 6ta ed., Ed. Bosch). (Énfasis nuestro).

Cónsono con lo anterior, es norma reiterada que **el registro no da ni quita derechos**. *Rolón Adorno v. Registrador, supra*, a la pág. 373; véase, además, *PR Prod. Cred. Assoc. v. Registrador*, 123 DPR 231, 237-238 (1989).

A la luz de las normas jurídicas antes expuestas, procedemos a resolver.

### -III-

En el presente caso, la señora Barreto Canales alega ser parte indispensable en los procedimientos instados por el recurrido para la ejecución de una sentencia dictada hace diecisiete (17) años y el embargo de una propiedad inmueble. Ello por cuanto aduce ser cotitular del inmueble objeto de ejecución y venta judicial. Por lo tanto, alega que la celebración de la referida venta para ejecutar la propiedad incidiría con sus derechos de propiedad sin el debido proceso de ley. **Le asiste la razón.**

El foro primario, a pesar de los planteamientos esbozados por la peticionaria, no paralizó los trámites de ejecución de una propiedad inmueble al entender que, conforme a lo indicado en una Certificación Registral, ésta no posee la titularidad registral y, por lo tanto, un derecho o interés que proteger.

Sin embargo, la Escritura Núm. 402, que obra en el expediente, mediante la cual el Registro de la Propiedad anotó la titularidad de la señora Canales Rodríguez, y la razón por la que el Banco se sostiene en que la propiedad era exclusiva de ésta, no concuerda con el título inscrito. Una simple lectura del referido instrumento público refleja, específicamente en el párrafo sexto, que la señora Canales Rodríguez adquirió las participaciones de tres de sus hijos, Leida Noemí, Osvaldo y Wilfredo Barreto Canales, por el precio de $24,000.00,

suma total de $8,000.00 por cada una de las tres (3) participaciones. Siendo así, existe una controversia genuina que el foro primario no puede obviar sobre la titularidad de la propiedad que se pretende embargar.

De igual forma, al aplicar las normas jurídicas expuestas con anterioridad a los hechos del presente caso, los planteamientos de la señora Barreto Canales no sólo han controvertido las constancias registrales, sino también el pagaré hipotecario cuya restitución el foro primario ordenó. Dicho pagaré refleja que fue suscrito únicamente entre RG Mortgage y la señora Canales Rodríguez, sin contar con la comparecencia de aquellos que aducen ser cotitulares proindiviso de la propiedad que se gravó. Ante esto, el foro de instancia tiene que dilucidar si el presente caso se trata de la ejecución de un gravamen sobre exclusivamente la participación propietaria de la señora Rodríguez Canales o sobre la propiedad en sí misma. Lo anterior toda vez que, como vimos, un co-titular de una propiedad, a falta del consentimiento de los demás co-titulares, solo puede gravar su interés propietario individual.

Por su parte, el recurrido aduce que las constancias registrales sobre la propiedad son suficientes para derrotar los planteamientos de la peticionaria. No tiene razón.

De entrada, es norma reiterada que el Registro no da ni quita derechos. Al inscribir la titularidad de la señora Canales Rodríguez, tras calificar la Escritura Núm. 402, el Registrador de la Propiedad no determinó o adjudicó que la propiedad le pertenece a ésta. Más bien, y sujeto a sus facultades jurídicas, validó las formas extrínsecas del instrumento, auscultó la validez y eficacia de los actos y negocios jurídicos en éste, así como la capacidad jurídica de los otorgantes. La adjudicación sobre quién es el titular, registral o extraregistral, de una propiedad les corresponde a los tribunales, no a los Registradores de la Propiedad.

Como vimos, la controversia medular del presente caso versa sobre una anomalía entre el contenido de una escritura pública, con la realidad extraregistral jurídica que el instrumento produjo, y lo que consta en la inscripción que resultó de la presentación de dicha escritura en el Registro de la Propiedad. Ciertamente, las certificaciones registrales son documentos públicos que dan fe por sí mismos de los datos registrales en ellos contenidos. Sin embargo, **no son incontrovertibles ni fuente de derechos propietarios**.

Indudablemente, los planteamientos de la peticionaria ponen en duda la legitimidad jurídica para continuar con los procedimientos de ejecución. De igual manera, la señora Barreto Canales ha probado tener un interés legítimo para intervenir en el presente caso y tener la oportunidad de proteger los derechos propietarios aducidos.

Adicionalmente, es meritorio resaltar el hecho de que el recurrido no es un ciudadano común y corriente. Por la naturaleza de sus actividades comerciales y económicas, éste posee un conocimiento y peritaje mayores que los de cualquier otro ciudadano en las transacciones jurídicas que ejerce. Siendo así, nuestro ordenamiento jurídico no le permite ampararse únicamente en lo que disponga una certificación registral cuando, como ocurre en el presente caso, existe una controversia real y patente para ambas partes entre la realidad jurídica registral y la extraregistral.

Por todo ello, entendemos que el TPI erró al obviar tanto la aparente discrepancia entre la Escritura Núm. 402 y la constancia registral, como la controversia en cuanto a la validez del pagaré hipotecario, y dar paso a la venta judicial de la propiedad sin permitirle a la señora Barreto Canales intervenir en el proceso.

De otra parte, y debido a nuestra conclusión sobre el segundo señalamiento de error, resulta innecesario discutir el primer error presentado por la peticionaria.

**-IV-**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y autorizamos la intervención de la señora Barreto Canales en los procedimientos. Revocamos la *Orden* recurrida y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí dispuesto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones